NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GLORIA LABANDA, | Civil Action No.: 20-15086 |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**CECCHI, District Judge.**

I.    **INTRODUCTION**

Before the Court is Gloria Labanda's ("Plaintiff") appeal seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA" or the "Act").  This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

II.    **BACKGROUND**

This is Plaintiff's second time appealing an ALJ's denial of her application for DIB.  On March 28, 2013, Plaintiff first filed for DIB alleging disability beginning March 31, 2012.  Tr.[1] at 91.  The first claim was denied initially on July 10, 2013, and upon reconsideration on December 3, 2013.  *Id.*  In connection with that first claim, on June 19, 2015, an ALJ found that Plaintiff was severely impaired with degenerative disc disease of the cervical/lumbar spine and bilateral carpal

---

[1] "Tr." refers to the certified record of the administrative proceedings.  ECF No. 5.

tunnel syndrome, but concluded that Plaintiff could perform her past relevant work as a receptionist and therefore was not disabled. *Id.* at 91–103. Further, within his opinion, the ALJ thoroughly considered Plaintiff's mental impairments (including depression) and found they were not severe. *Id.* at 94. The District Court affirmed the ALJ's decision, holding that the ALJ supported his medical equivalency analysis and RFC determination with substantial evidence. *Labanda v. Comm'r of Soc. Sec.*, No. 17-3354, ECF Nos. 13, 14, 2018 WL 259948 (D.N.J. Jan. 2, 2018).

Thereafter, on March 31, 2017, Plaintiff filed her second claim for DIB, which is at issue on the instant appeal. Tr. at 12. Plaintiff alleges disability beginning June 20, 2015, based on largely similar grounds to those of her first claim including degenerative disc disease of the cervical and lumbar spine, bilateral carpal tunnel syndrome, depression, and anxiety. *Id.* at 12, 93–102. The adjudicatory period for Plaintiff's instant claim only runs from June 20, 2015 through December 31, 2015 (the "relevant period").[2]

During this period, Plaintiff denied suffering from anxiety or depression to her healthcare providers, and presented as only mildly impaired at mental status examinations. *Id.* at 15–16, 527, 546, 557, 561. Further, although Plaintiff regularly sought treatment from her primary care physician for physical ailments not at issue on this appeal, such as an ankle fracture and abdominal/pelvic pain, she did not report any problems related to her neck, back, or hands during the relevant period. *Id.* at 537–40, 543–89. While Plaintiff began experiencing right shoulder pain and restricted abduction around November 2015, her physician noted that she possessed an otherwise normal range of motion, intact stability, and normal muscle strength and tone. *Id.* at

---

[2] The relevant period ends on December 31, 2015, because Plaintiff's date last insured expired on that date. Tr. at 13; 20 C.F.R. § 404.131(a).

550–51.  In December 2015, an orthopedist diagnosed Plaintiff with right shoulder impingement syndrome and gave her an injection.  *Id.* at 543–44.  After receiving the injection, Plaintiff did not report any further shoulder complaints through the end of the relevant period.  *Id.* at 537–40.  Moreover, Plaintiff did not complain about her shoulder to treating physicians at appointments after December 31, 2015.  *Id.* at 460–63, 468–71, 475–79, 486–91, 494–97, 502–06, 510–21, 526–29.

Plaintiff's instant claim for DIB was denied initially on September 15, 2017, and upon reconsideration on December 15, 2017.  *Id.* at 12.  Following the denial upon reconsideration, Plaintiff appeared and testified at a hearing before the ALJ held on July 9, 2019.  *Id.*  At the hearing, the ALJ asked Plaintiff if her functional ability had significantly changed since the 2015 hearing on her first claim, to which Plaintiff responded "[n]othing really has changed."  *Id.* at 53–54.  An impartial vocational expert also testified at the hearing and opined that a hypothetical individual with Plaintiff's diagnoses could perform Plaintiff's past relevant sedentary work.  *Id.* at 12, 64–65.  Following the hearing, on October 24, 2019, the ALJ issued a decision denying Plaintiff's application for DIB and finding Plaintiff not disabled.  *Id.* at 7–21.  The Appeals Council denied Plaintiff's request for review on September 2, 2020.  *Id.* at 1–3.  This appeal followed.  ECF No. 1.

## III.  <u>LEGAL STANDARD</u>

### A.  **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g); 1383(c)(3).  The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g).  Nevertheless,

the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

**B.     Determining Disability**

In order to be eligible for benefits under the SSA, a claimant must show that she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if her physical or mental impairments are "of such severity that [she] is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382a(3)(D).

### C. Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit her ability to work. *Id.* Third, if she has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

5

The evaluation continues through each step unless it is ascertained at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). "The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy." *Id.* at 555.

## IV.   DISCUSSION

### A.   Summary of the ALJ's Decision

When evaluating Plaintiff's instant claim for disability, at step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity during the relevant period. Tr. at 14. At step two, the ALJ found that Plaintiff had the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease; rheumatoid arthritis; right shoulder tendinopathy with impingement syndrome; and bilateral carpal tunnel syndrome. *Id.* at 15; 20 C.F.R. § 404.1520(c). The ALJ also found that Plaintiff had two non-severe mental impairments (depression and anxiety) and the following non-severe physical impairments: diabetes mellitus; sprain/strain of the left ankle, with fracture of the left fibula; GERD; gastritis; hypertension; sinusitis; hypercholesterolemia; allergic rhinitis; pharyngitis; cystitis; bronchitis; and otitis media. Tr. at 15. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listings. *Id.* at 16–17. Because the ALJ found that Plaintiff's impairments did not equal an impairment enumerated in the Listings, there was no presumption of disability. *Id.* at 17–20. Next, based on all the evidence in the record, the ALJ found that during the relevant period, Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with some exertional and non-exertional limitations. Tr. at 17–20. At step four, the ALJ held, based on the vocational expert's

testimony and the record as a whole, that Plaintiff's RFC permitted the performance of past relevant work. *Id.* at 20–21. Thus, the ALJ concluded that Plaintiff was not under a disability as defined in the SSA during the relevant period and denied Plaintiff's application for DIB. *Id.* at 21.

**B.      Plaintiff's Arguments on Appeal**

In the instant appeal, Plaintiff makes four primary arguments. First, Plaintiff challenges the ALJ's assessment of Plaintiff's mental impairments at step two. ECF No. 11 at 12–14. Second, Plaintiff claims that, as a result of the ALJ's purported error at step two, the ALJ's RFC determination did not adequately consider Plaintiff's mental impairments. *Id.* at 15–20. Third, Plaintiff avers that the ALJ's physical RFC analysis contradicts the medical evidence and does not adequately reference the record. *Id.* at 24–30. Fourth and finally, Plaintiff argues that the ALJ improperly determined that she can resume past relevant work because the vocational expert's testimony on which the ALJ relied purportedly did not consider the entire medical record. *Id.* at 30–35. The Court will consider these arguments in turn.

**1.      Assessment of Plaintiff's Mental Impairments at Step Two**

First, Plaintiff argues that the ALJ improperly rejected evidence regarding her mental impairments at step two, which in turn skewed the analysis at subsequent steps of the sequential evaluation. ECF No. 11 at 9. The Court does not find this argument persuasive.

As noted above, the ALJ found that Plaintiff's depression and anxiety were non-severe impairments because the medical evidence did not establish that the alleged conditions had more than a minimal effect on her ability to work. Tr. at 15. In making his determination, the ALJ considered the four broad areas of mental functionality set out in the Listings for anxiety and depression: (1) understanding, remembering, and applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself.

20 C.F.R. § 404.1520a(c); Tr. at 15–16.  The ALJ thoroughly analyzed each of these four areas and cited to specific evidence in the record of Plaintiff's ability to function "independently, appropriately, and effectively, on a sustained basis." Tr. at 15–16.  For example, regarding the first functional area, the ALJ explained that the medical evidence of record indicated no deficit in her long-term memory, short-term memory, insight, or judgment. *Id.* at 15 (citing Tr. at 528, 539, 547, 558, 563, 576, 579, 586).  Regarding the second functional area, the ALJ supported his finding of only mild limitation by citing evidence in the medical record, which indicated Plaintiff routinely interacted adequately with her treating practitioners. *Id.*  In analyzing the third functional area, the ALJ determined that Plaintiff's limitations were only mild because she did not have any significant limitations in concentration during examinations. *Id.* at 15–16 (citing Tr. at 443, 528, 539, 547, 558, 563, 576, 579, 586).  For the final area, the ALJ referred to the medical evidence of record to show that Plaintiff did not have serious deficiencies in caring for herself and regularly presented to treating practitioners as not seriously deficient in this area. *Id.* at 16 (citing Tr. at 528, 539, 547, 558, 563, 576, 579, 586).  Furthermore, the ALJ put considerable weight behind the fact that Plaintiff denied any symptoms of mental health impairments and reported normal mental health status during examinations throughout the relevant period. *Id.* at 15–16 (citing Tr. at 527–28, 539, 546–47, 557–58, 561, 563, 576, 579, 586, 703, 876, 883).

Moreover, the ALJ properly evaluated any contradictory opinions and explained his basis for placing less weight on such evidence.  For example, Plaintiff has pointed to a diagnosis of severe mental impairment by DDS medical consultants, which purportedly contradicted the ALJ's finding.  ECF No. 11 at 19.  However, contrary to Plaintiff's contentions, the ALJ explicitly considered the DDS consultants' opinions, weighed the persuasiveness, and determined that he would afford it less credibility in the severity analysis at step two because the consultants did not

personally examine the Plaintiff and because the opinion contradicted the overall medical record. Tr. at 20. The ALJ's analysis comports with the relevant standards as, generally, "the opinions of a doctor who has never examined a patient have less probative force as a general matter, than they would have had if the doctor had treated or examined him." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (internal quotations omitted). Further, if "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician," as is the case here, "the ALJ may choose whom to credit." *Id.* at 317. Plaintiff's "mere disagreement with the weight the ALJ placed on the [medical] opinion is not enough for remand." *Moody v. Comm'r of Soc. Sec. Admin.*, No. 15-8319, 2016 WL 7424117, at *8 (D.N.J. Dec. 23, 2016).[3] Accordingly, this Court finds that the ALJ appropriately considered the entire record and relied upon credible and substantial evidence in denying Plaintiff's claims of severe mental impairment at step two.

## 2. Assessment of Plaintiff's Mental Impairments in the RFC Analysis

Plaintiff next argues that the ALJ failed to consider her mental impairments as part of his RFC analysis. The ALJ reviews "all of the relevant medical and other evidence" in the record and resolves conflicts in the evidence in determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3). Further, the ALJ must "provide a 'clear and satisfactory explication' of the basis on which his determination rests." *Mays v. Barnhart*, 78 F. App'x 808, 812 (3d Cir. 2003) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 93d Cir. 1981)). Here, the ALJ thoroughly analyzed and explained the

---

[3] Plaintiff's alleged authority to support remand at step two is entirely distinguishable. *See, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (there, unlike here, the ALJ did not even mention contradictory medical findings, let alone assess their credibility); *Knauss v. Comm'r of Soc. Sec.*, No. 17-437, 2018 WL 1535213, at *5 (D.N.J. Mar. 29, 2018) (not analogous as the ALJ "did not provide any reasoning at Step 2"); *Ruberti v. Comm'r of Soc. Sec.*, No. 16-8977, 2017 WL 6492017, at *8–9 (D.N.J. Dec. 19, 2017) (dissimilar from the circumstances of this case, as the ALJ there failed to cite to "any of the objective medical evidence in the record" in discussing the lack of severity of mental impairments).

relevant evidence in making his RFC determination.  The ALJ appropriately walked through the four areas of mental health functionality under the SSA and cited to medical evidence in the record supporting his finding that Plaintiff's mental impairments caused no more than "mild" limitation. *See* Tr. at 15–16 (citing Tr. at 527–28, 539, 546–47, 557–58, 561, 563, 576, 579, 586, 703, 876, 883).  Contrary to Plaintiff's contention that the ALJ failed to consider her alleged depression and anxiety, the opinion includes a detailed discussion of evidence indicating that Plaintiff denied any symptoms of mental health impairment and underwent normal mental health status examinations. *Id*. at 15 (citing, *e.g.*, Tr. at 703, 876, 882–83); *see also id.* at 527, 546, 557, 561 (Plaintiff repeatedly denied suffering from depression or anxiety to her treating providers).  Moreover, the ALJ expressly stated that his findings regarding the severity of Plaintiff's mental health impairments were incorporated into his RFC analysis.  *Id*. at 16 ("[T]he following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis."); *id.* at 20 (discussing evidence in the RFC analysis "which reflects that the claimant's anxiety and depression are not severe") (internal citations omitted).  Thus, the Court finds that the ALJ properly considered the effect of Plaintiff's mental impairments as part of his RFC finding.

### 3.    Assessment of Plaintiff's Physical Impairments in the RFC Analysis

Next, Plaintiff challenges the ALJ's RFC determination as it relates to Plaintiff's physical impairments.  As noted above, after considering the entire evidentiary record, the ALJ determined that Plaintiff's RFC permitted sedentary work with certain limitations.  *Id*. at 17.  This court affirms this determination.   As previously noted, the ALJ must "provide a 'clear and satisfactory explication' of the basis on which his [RFC] determination rests." *Mays*, 78 F. App'x at 812.  Here, the ALJ specifically cited to and discussed the full record, and explained how that evidence

restricted Plaintiff's RFC.  For example, the ALJ considered Plaintiff's testimony and function report regarding her physical impairments and expressly incorporated it into his RFC determination.  Tr. at 18.  Further, the ALJ thoroughly walked through several years of medical records to establish a full picture of the medical evidence as part of his RFC determination.  *Id.* at 18–20.  Moreover, the ALJ showed, through a comprehensive review of the evidence, that his physical RFC determination – sedentary work with restrictions – was consistent with the diagnoses of medical sources (treating or otherwise) during the relevant period.  Tr. at 19–20;  *See, e.g, Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004) ("Not one of [plaintiff]'s treating physicians opined that she was unable to work, let alone meet the modest demands of sedentary work. This lack of medical evidence is very strong evidence that [plaintiff] was not disabled.").  Here, as in *Lane*, the diagnoses of Plaintiff's treating physicians are consistent with the ALJ's RFC determination that Plaintiff is capable of limited sedentary work.  The ALJ cited to treating physician notes discussing Plaintiff's physical limitations relating to her shoulder, neck, back and spine, and determined that based on these diagnoses, Plaintiff possessed the RFC for limited sedentary work during the relevant period.   Tr. at 19

Although Plaintiff argues that some evidence in the record contradicts the ALJ's findings of Plaintiff's physical RFC, the evidence she cites was explicitly discounted by the ALJ.  For example, the conclusions of DDS medical consultants received less weight from the ALJ because the consultants did not personally examine the Plaintiff.  *Id.* at 19–20.  Likewise, the ALJ explained that he gave less consideration to a medical report by MidJersey Orthopedics because the report was incomplete, unclear, and lacked sufficient support consistent with the rest of the medical evidence.  *Id* at 20.  The ALJ also found the 2017 medical reports of Dr. Robert Wisen and the Center for Asthma & Allergy to be unpersuasive, because they did not adequately address the

11

claimant's functional abilities. *Id.* The ALJ provided a detailed explanation articulating his analysis of competing medical evidence and explained why evidence supporting greater RFC restrictions lacked credibility. Accordingly, the ALJ thoroughly considered the medical evidence pertaining to Plaintiff's physical impairments and resulting limitations and reinforced his determination of Plaintiff's physical RFC with substantial evidence from the record.

### 4.   Assessment of Plaintiff's Ability to Resume Past Relevant Work

Given this Court's finding that the ALJ properly determined Plaintiff's RFC, it follows that the ALJ appropriately relied on the vocational expert's testimony regarding Plaintiff's ability to resume past relevant work. Plaintiff acknowledges that the ALJ's complete reliance on the vocational expert's testimony is entirely justified "if the ALJ's hypothetical questioning accurately reflects restrictions supported by the medical record," but argues that here, the hypothetical was based off the ALJ's allegedly deficient RFC analysis. ECF No. 11 at 33; *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999) (holding VE's testimony in response to ALJ's hypothetical question that fairly set forth every credible limitation established by the evidence and set forth in the RFC analysis was substantial evidence of non-disability).

Plaintiff's argument lacks merit because the ALJ's hypothetical questions to the vocational expert appropriately contained all the impairments which the ALJ found to be credibly established by the objective medical evidence in his RFC analysis. Tr. at 21; *see also Zirnsak v. Calvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that ALJ need not submit *every* impairment to the VE, but rather, only those that the ALJ has found credible based on record evidence); *Lee v. Comm'r of Soc. Sec.*, 248 F. App'x. 458, 462 (3d Cir. 2007) ("There was no need to include a mental impairment in the hypothetical as the determination that her condition was not severe was supported by substantial evidence."). Accordingly, this Court finds that the ALJ appropriately

relied on the VE's testimony regarding Plaintiff's ability to engage in past relevant work, and thus supported his decision at this step of the sequential analysis with substantial evidence.

**V.**      **CONCLUSION**

For the reasons above, the ALJ's decision is affirmed.  An appropriate Order will follow.

**DATE:** March 29th, 2022

                                                    s/ Claire C. Cecchi
                                          _____
                                              **CLAIRE C. CECCHI, U.S.D.J.**